FILED
2019 Jun-18 PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **ANNA L. SIMPLER,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. 3:18-CV-1531-CLS** |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Claimant, Anna Simpler, commenced this action on September 19, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner affirming the decision of the Administrative Law Judge denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant argues that the Commissioner's decision was neither supported by substantial evidence nor in accordance with legal standards. Specifically, claimant asserts that the ALJ improperly considered the consultative examiner's assessment, improperly substituted her opinion for that of the medical experts, and failed to consider the side effects of claimant's medications upon her ability to work. Upon consideration of the record and the parties' briefs, the court finds merit in claimant's first and third arguments.

**A.     Consultative Physician's Opinion**

Social Security regulations provide that, in considering what weight to give any medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Ernest Lee Mollohan conducted a consultative physical examination on

July 19, 2016.[1] Claimant reported experiencing lumbar radiculopathy since 2015, which caused weakness, numbness, tingling, and dull, sharp, and stabbing pain at a level six on a good day and level ten on a bad day. The pain could be relieved by changing positions, medication, stretching, propping up her legs, and rest. It was aggravated by standing and walking more than five minutes, bending, and stooping. She also reported right knee pain at level 4-10 since 2012. The pain manifested as sharp and stabbing, and she also experienced weakness and numbness in the knee. The pain was relieved by propping up her knee, resting, lying down, and taking medications. It was aggravated by standing and walking more than five minutes, bending, and stooping. Although she experienced intermittent weakness, numbness, and tingling in her lower back into both feet, she did not suffer from those symptoms on the date of the examination. During the musculoskeletal examination, claimant did not use an ambulatory device but did demonstrate antalgic gait secondary to level ten pain in her thoracic vertebrae. She also experienced level ten pain in her hip and right knee while walking sixty feet, causing her to be unable to complete the other sixty feet that were planned for the gait analysis. She was able to sit for thirty minutes and stand for only five to ten minutes before having to sit down for comfort. She moved slowly when standing from a seated position, and she was able to move

---

[1] The ALJ and claimant both refer to this physician as "Dr. Lee," but it is clear that his name is Dr. Mollohan. The court will consider that mistake to be a mere typographical error.

on and off the examination table without difficulty or complaint. She was able to heel-toe walk, and her straight leg raise tests were normal. She demonstrated level-six-to-seven tenderness upon palpitation to her vertebrae and paraspinal musculature and level-ten tenderness upon palpitation to her sacroiliac joint. She had good cervical range of motion, but the testing elicited level-nine pain. Her hip and lumbar range of motion was limited, and the testing elicited level-eight to level-nine pain. Femoral rotation was normal, but testing elicited level-five pain. She could only minimally squat due to level-nine knee pain, and her knee range of motion was limited. Range of motion in her ankles, feet, shoulders, arms, elbows, wrists, hands, and fingers was normal, but she did experience level-six pain in her shoulder. She had full bilateral grip strength. Claimant did not complain of any radicular pain or other neurological symptoms during the examination, and she "displayed a genuine, honest and motivated effort to perform all of the examination maneuvers."[2]

Dr. Mollohan also completed a "Medical Source Statement Of Ability To Do Work Related Activities (Physical)" form. He indicated that claimant could occasionally lift up to ten pounds, but she could never carry any weight. She could sit for forty-five minutes at a time, and for seven total hours, during an eight-hour work day. She could stand for ten minutes at a time, and for a total of thirty minutes.

---

[2] Tr. 645-51.

4

She could walk for five minutes at a time, and for a total of thirty minutes. She did not require an assistive device to ambulate. She could continuously use both hands to handle, finger, and feel, frequently use both hands to reach overhead, and occasionally use both hands to push, pull, and perform other reaching movements. She could frequently use both feet to operate foot controls. She could occasionally balance, but could never climb, stoop, kneel, crouch, or crawl. She had no visual or hearing impairments. She could not walk a block at a reasonable pace on rough or uneven surfaces, or climb a few steps at a reasonable pace with the use of a single hand rail. She could shop, travel without a companion, ambulate without an assistive device, use standard public transportation, prepare a simple meal, feed herself, care for her personal hygiene, and sort, handle, and use paper files. All of the limitations Dr. Mollohan imposed had lasted or would last for twelve consecutive months.[3]

Dr. Mollohan's assessment is consistent with the ability to perform sedentary work,[4] but not any higher level of work. That is important because if claimant were

---

[3] Tr. 640-44.

[4] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

5

limited to only sedentary work, the grids would dictate a finding of disability.[5] The ALJ, however, found claimant to be capable of performing a limited range of *light* work activity, which did not require a finding of disability under the grids.[6] In so finding, the ALJ assigned Dr. Mollohan's assessment only little weight because, in the ALJ's words,

> the limitations are excessive in comparison to the medical evidence and Dr. [Mollohan's] own examination findings. Although the claimant has demonstrated some limitation in range of motion, particularly with regard to lumbar flexion and extension, hip flexion, and right knee. . ., Dr. [Mollohan's] examination and various other examinations have generally shown intact cranial nerves, full strength, normal sensation, negative straight leg raises, symmetrical reflexes, ambulation without an assistive device, and no difficulties with toe walking and heel walking . . . . This combined with the claimant['s] testimony that she is able to lift and carry 10 pounds comfortably and her statement that she has changed her 28 pound grandson's diapers, support the conclusion that

---

[5] Medical-Vocational Rule 201.14 dictates a finding of "not disabled" for an individual closely approaching advanced age, who has a high school education or more that does not provide for direct entry into skilled work, whose past work experience is skilled or semiskilled with non-transferable skills, and who is limited to sedentary work as a result of severe medically determinable impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14.

[6] Tr. 15.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

>she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk for a total of six hours, and sit for a total of six hours in an eight hour work day with normal breaks. The undersigned further concludes that the claimant is able to push and pull as much as she can lift and carry, frequently climb ramps and stairs but should never climb ladders, ropes, and scaffolds, frequently balance, and occasionally stoop, kneel, crouch, and crawl. Given her history of cervical degenerative disc disease, the claimant should avoid more than occasional overhead reaching with the bilateral upper extremities. She should too avoid work [at] unprotected heights, work around moving mechanical parts, and more than occasional exposure to vibrations.

Tr. 19 (alterations supplied).

As a general matter, the ALJ adequately articulated her reasons for not fully crediting Dr. Mollohan's findings, but there were some conclusions she failed to explain. For example, the ALJ concluded that Dr. Mollohan's findings of "intact cranial nerves, full strength, normal sensation, negative straight leg raises, symmetrical reflexes, ambulation without an assistive device, and no difficulties with toe walking and heel walking" outweighed the findings of limited range of motion, antalgic gait, inability to walk more than sixty feet, slow movement when arising from a seated position, and tenderness to palpitation in her vertebrae and paraspinal muscles, but she failed to explain why. The latter group of findings would support more significant limitations than those imposed by the ALJ.

Looking beyond Dr. Mollohan's assessment, some other portions of the record

7

contain findings like normal gait,[7] good knee strength,[8] and negative straight leg raise tests.[9] Even so, the record also contains objective findings that would be inconsistent with Dr. Mollohan's findings. A March 24, 2015 MRI revealed "dessication of the L4-5 disc with diffuse bulge of this same disc. This results in compression of the anterior thecal sac to a moderate degree."[10] An August 8, 2014 MRI revealed "right paramedian disc protrusion at the C5-6 level, of moderate degree."[11] Examination records from other treatment providers also revealed asymmetrical gait, positive straight leg raise tests, and tenderness to palpitation in the knee and lumbar regions.[12] Finally, the ALJ appears to have given significant weight to the fact that claimant changes her 28-pound-grandson's diapers, but claimant testified that her grandchild removes the diapers for her, and she does not have to lift him because he can climb into a carseat or onto a changing table.[13] As a whole, the record contains *some* evidence to support the ALJ's conclusion about Dr. Mollohan's report, but it was not supported by *substantial* evidence. Remand is warranted for further consideration of Dr. Mollohan's report, and for further development of the record regarding the effects

---

[7] Tr. 449, 453, 457, 462, 586.

[8] Tr. 508, 564.

[9] Tr. 671, 676, 680, 709, 714, 723, 729, 734, 739.

[10] Tr. 391.

[11] Tr. 399.

[12] Tr. 467, 472, 478, 483, 488, 534, 614, 668, 671, 676, 680, 709, 714, 723, 729, 734, 739.

[13] Tr. 70-71.

8

of claimant's functional impairments, if necessary.

## B. Medication Side Effects

Claimant testified during the first administrative hearing that she experienced dizziness, lightheadedness, and tiredness as side effects of her medications, including Lyrica and Ultram.[14] She testified during the second hearing that her medications in general made her feel drowsy and sleepy.[15] Claimant argues that the ALJ erred by failing to mention that testimony in her administrative decision, or to give any other indication that she considered the effects of claimant's medications on her ability to work. This court agrees. Social Security regulations provide that medication side effects are a permissible consideration in evaluating a claimant's complaints of pain. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Without any mention of claimant's side effects, there is no way to know whether the ALJ merely overlooked them, discredited them, or acknowledged them but determined they did not have a material effect on claimant's ability to work. There is, therefore, no way to determine whether the ALJ properly evaluated the side effects or whether her decision was supported by substantial evidence. Remand is warranted for the ALJ to correct that deficiency, and to conduct any other appropriate proceedings.

An appropriate order will be entered contemporaneously herewith.

---

[14] *See* Tr. 58-59.
[15] Tr. 94.

DONE this 18th day of June, 2019.

_____
United States District Judge